IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE and GREAT OLD BROADS FOR WILDERNESS,<br><br>              Plaintiffs,<br><br>vs.<br><br>SELMA SIERRA, in her official capacity as Director of the Bureau of Land Management Utah State Office, BUREAU OF LAND MANAGEMENT, and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>              Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:08-CV-195-TC |

      Plaintiffs Southern Utah Wilderness Alliance and Great Old Broads for Wilderness (collectively "SUWA") filed a challenge to the U.S. Bureau of Land Management's (BLM) denial of SUWA's petition to close Arch Canyon, in San Juan County, Utah, to motorized vehicle use. SUWA brings its claim under the Administrative Procedure Act (APA), the Declaratory Judgment Act, and the Federal Land Policy and Management Act (FLPMA), as well as two Executive Orders and BLM regulation 43 C.F.R. § 8341.2(a) (providing express authority to immediately close land to vehicle use upon a finding of considerable adverse effects).

      The Federal Defendants (Selma Sierra in her official capacity as Director of BLM's Utah State Office, the BLM, and the U.S. Department of the Interior) have filed a Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, challenging the Complaint on its face

(i.e., allegations are taken as true for purposes of analysis).  Specifically, they contend that agency action (or inaction) authorized by the Executive Orders and the BLM regulation is not subject to judicial review under the APA because the actions allowed by those authorities are committed to agency discretion by law.

As set forth below, the Defendants' Motion to Dismiss is DENIED because SUWA's claim does not fall within the narrow exceptions to judicial review under the APA.

## BACKGROUND

Arch Canyon is located in the Cedar Mesa Area in Utah.  In 1988, BLM designated the Cedar Mesa Area an Area of Critical Environmental Concern (ACEC).  ACECs are defined as:

> areas within the public lands where special management attention is required (when such areas are developed or used or where no development is required) to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources, or other natural systems or processes, or to protect life and safety from natural hazards.

43 C.F.R. § 1601.0-5(a).  The Cedar Mesa ACEC is governed by BLM's 1991 Resource Management Plan for the San Juan Resource Area.

In December 2006, SUWA filed its Petition to Preserve Arch Canyon's Natural and Cultural Heritage ("Petition") with the BLM.  (See Ex. A to Pls.' Opp'n to Mot. Dismiss.)  In the Petition, SUWA requested that BLM close Arch Canyon to off-road vehicle (ORV) use, citing two Executive Orders[1] and BLM regulations as authority for closure.  The most pertinent BLM

---

[1]The two executive orders cited by SUWA provide federal land management agencies with direction and authority to rein in motorized use of public lands where it places resources at risk.  In 1972, President Nixon issued Executive Order (E.O.) 11644, entitled "Use of Off-Road Vehicles on the Public Lands," which detailed a national policy to manage off-road vehicle (ORV) use through regulations designed to "protect[] the resources of the public lands, promot[e] the safety of all users of those lands, and minimiz[e] conflicts among the various uses of those

regulation (which incorporates much of the relevant language in the two Executive Orders) provides as follows:

> (a) Notwithstanding the consultation provisions in § 8342.2(a), <u>where the authorized officer determines that off-road vehicles are causing or will cause considerable adverse effects</u> upon soil, vegetation, wildlife, wildlife habitat, cultural resources, historical resources, threatened or endangered species, wilderness suitability, other authorized uses, or other resources, <u>the authorized officer shall immediately close the areas affected</u> to the type(s) of vehicle causing the adverse effect until the adverse effects are eliminated and measures implemented to prevent recurrence.

43 C.F.R. § 8341.2(a) (emphasis added).

SUWA's Petition was based on, and accompanied by, two reports of SUWA's experts who had studied the condition of Arch Canyon and the impacts caused by ORVs to Arch Canyon's riparian ecosystem and archaeological sites located in Arch Canyon. SUWA's experts concluded that ORVs were damaging both types of resources (i.e., were causing considerable adverse effects and undue degradation) and that BLM management was in violation of its duty to protect those resources under FLPMA and its implementing regulations.

BLM's Acting Field Manager, Robert Winthrop, responded to SUWA on June 4, 2007, with a one-page letter in which he denied SUWA's Petition. The text of that letter reads, in

---

lands." Exec. Order No. 11,644 § 3, 37 Fed. Reg. 2877 (Feb. 8, 1972). In 1977, President Carter amended and strengthened E.O. 11644 by adding a provision that required the head of the relevant federal agency, "whenever he determines that the use of off-road vehicles will cause or is causing considerable adverse effects on the soil, vegetation, wildlife, wildlife habitat or cultural or historic resources of particular areas or trails of the public lands, [to] immediately close such areas or trails to the type of off-road vehicle causing such effects, until such time as he determines that such adverse effects have been eliminated and that measures have been implemented to prevent future recurrence." Exec. Order No. 11,989, 42 Fed. Reg. 26,959 (May 24, 1977). In 1979, BLM incorporated Executive Order 11644, as amended by Executive Order 11989, into its regulations at 43 C.F.R. § 8341.2.

relevant part, as follows:

> The Monticello Field Office has evaluated your "Petition to Preserve Arch Canyon's Natural and Cultural Resources." I have given careful consideration to the concerns expressed in your petition and have concluded that closure of the canyon is not warranted. <u>After reviewing the information you provided and after conducting additional field assessments, we have determined</u> that no resource uses and activities presenting occurring in the canyon are causing, or are likely to cause, significant impacts to the human environment. We have had several resource specialists (hydrologist, rangeland, and riparian) including experts from the BLM State Office and the Denver National Science and Technology Center assist us in assessing the health of the resources and <u>conclude that no undue and unnecessary damage is occurring</u>. We will continue to closely monitor activities in Arch Canyon and will make adjustments if necessary.

(June 4, 2007 Letter from BLM to SUWA ["Winthrop Letter"], attached as Ex. E to SUWA's Mem. Opp'n. (emphasis added))

SUWA then filed the action currently before the court, alleging that the Winthrop Letter constituted a final agency action under 43 C.F.R. § 8341.2(a) (and the two Executive Orders) that was arbitrary, capricious, and contrary to law, in violation of the APA, 5 U.S.C. § 706(2)(A).

## ANALYSIS

**The Agency Action is Not Committed to Agency Discretion by Law.**

SUWA seeks judicial review of BLM's denial of SUWA's Petition. The BLM contends that SUWA is not entitled to judicial review because the BLM has broad discretionary authority under the APA to decide whether to exercise its authority under the regulation and E.O.'s. See 5 U.S.C. § 701(a)(2) ("This chapter [of the APA] applies . . . except to the extent that . . . agency action is committed to agency discretion by law.").

"[T]he APA establishes a <u>strong presumption in favor of reviewability</u> of agency action." <u>McAlpine v. United States</u>, 112 F.3d 1429, 1432 (10th Cir. 1997) (emphasis added) (citing

Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967)[2]). But the United States Supreme Court, in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971), noted the two statutory exceptions to that strong presumption, stating that the action of each government agency is "subject to judicial review except where there is a statutory prohibition on review or where 'agency action is committed to agency discretion by law.'" Id. at 410 (emphasis added) (quoting APA § 701(a)(2)).  The second exception is relevant here.  The Court nevertheless stated that "the exception for action 'committed to agency discretion' . . . is a very narrow exception.  The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'"  Id. (internal citations omitted) (emphasis added) (quoting APA legislative history).  See also, e.g., Colorado Envt'l Coal. v. Wenker, 353 F.3d 1221, 1228 (10th Cir. 2004) (stating that "[e]xemption from judicial review of agency decisions is narrow" and that judicial review is barred when the decision is committed to the agency's judgment "absolutely").

After Overton Park, the Supreme Court, in Heckler v. Chaney, 470 U.S. 821 (1985), held that judicial review is precluded when the statute (or regulation) is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 830 (emphasis added).  In other words, no judicial review is available when there is no law to apply.  Nevertheless, the Chaney Court noted that the presumption of nonreviewability created by discretionary language may be rebutted by showing there is law to apply. Id. at 834. See also, e.g., Cornell Vill. Tower Condo. v. Dep't of Hous. & Urban Dev., 750 F. Supp. 909, 915 (N.D.

---

[2]Abbott Laboratories was later overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 (1977).

Ill. 1990) ("Where agency action is of a sort that is inherently unsuitable for judicial review, a presumption of nonreviewability is imposed, which can be defeated by a showing that Congress intended to circumscribe agency discretion by 'provid[ing] meaningful standards for defining the limits of that discretion.'") (quoting Chaney, 470 U.S. at 834).

Furthermore, some courts have limited Chaney to agency enforcement actions that are akin to exercising prosecutorial discretion. See, e.g., Robbins v. Reagan, 780 F.2d 37, 44-45 (D.C. Cir. 1985) (declining to apply the Chaney presumption of nonreviewability in case where challenged agency action concerned rescission of contract to build model homeless shelter); Beverly Health & Rehab. Servs., Inc. v. Thompson, 223 F. Supp. 2d 73, 89 (D.D.C. 2002) (rejecting application of Chaney presumption and noting that facts in case before court concerned validation of survey protocol used to monitor compliance with requirements for nursing homes participating in Medicare and Medicaid programs).

Following that line of cases, SUWA contends that Chaney and related cases cited by the Government are not applicable here because the agency action SUWA seeks is not enforcement action (i.e., agency action to coerce a third party to do (or refrain from doing) something in conformance with already existing agency rules). The court agrees.

SUWA is not asking the BLM to take an enforcement action in the traditional sense discussed by the courts (i.e., enforcement action akin to what criminal prosecutors do when deciding whether to indict). That is, SUWA does not seek BLM action to enforce ORV restrictions against third parties. Rather, SUWA seeks an order requiring BLM to close Arch Canyon to ORV use. In its complaint, SUWA alleges that BLM violated its duties under FLPMA and the APA when, after apparently choosing to review SUWA's Petition and the state

of natural, historic, and cultural resources in Arch Canyon, the BLM arbitrarily and capriciously declined, in a one-page letter, to close Arch Canyon to ORV use. Moreover, the discretionary language in § 8341.2(a) is not so broad that there is no meaningful standard to apply.

And even if the court found that the Heckler v. Chaney presumption applies, judicial review would still be available because there is law to apply. FLPMA, the BLM regulation (43 C.F.R. § 8341.2(a) (implementing FLPMA's mandate to the agency)), and the two Executive Orders all contain language providing a meaningful standard (e.g., the "considerable adverse effects" language).[3] For example, in Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir. 1988),[4] the Tenth Circuit held that even if BLM's refusal to require a county to obtain a permit before conducting road work across public land could be characterized as an enforcement action, there was "law to apply" which defeated the presumption against reviewability. 848 F.2d at 1075. In that case, the "law to apply" was the statutory mandate in FLPMA requiring BLM to protect wilderness study areas from impairment or undue degradation, which imposed a "definite standard." Id. at 1075-76 ("[U]nlike the statute in Chaney, FLPMA provides law to apply."). See also Sierra Club v. Clark, 756 F.2d 686, 690 (9th Cir. 1985) (reviewing claim that agency violated 43 C.F.R. § 8341.2(a) when it decided not to close conservation area to ORV use); Utah Shared Access Alliance v. Carpenter, 463 F.3d 1125, 1136 (10th Cir. 2006) (reviewing BLM's

---

[3]The court finds that the two Executive Orders provide law to apply and may be enforced under the APA because, as required in City of Albuquerque v. U.S. Dep't of Interior, 379 F.3d 901, 913 (10th Cir. 2004), they have a specific statutory foundation (and so should be given the effect of a congressional statute), they do not preclude judicial review, and they provide an objective standard by which the court can judge the BLM's action.

[4]Sierra Club v. Hodel was overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh, 956 F.2d 970 (10th Cir. 1992).

decision to close area to ORV use under 43 C.F.R. § 8342.1(a) and noting that exercise of authority under that regulation "is a lawful discharge of the BLM's duty [under FLPMA] to prevent undue degradation of resources").[5]

This case does not fall within the standards set forth in Heckler v. Chaney or APA Section 701(a)(2). For the reasons stated above, the BLM's decision is subject to judicial review if it is final agency action.

**The BLM's Letter and Decision Constitute Final Agency Action under the APA.**

Because the court has ruled that BLM's authority under the regulation and executive orders is not committed to agency discretion by law, the next question is whether BLM's denial of SUWA's Petition is a final agency action subject to judicial review. See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.") (emphasis added).

An agency action is final under APA § 704 when two conditions are met. "First, the action must mark the 'consummation' of the agency's decisionmaking process. [I]t must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted). "[T]he Supreme Court has instructed us in Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), that we are to apply the

---

[5]Arguably, the Winthrop Letter demonstrates that BLM chose to exercise its discretion to investigate whether considerable adverse effects had occurred. In that situation, the discretion issue could be considered moot. See Utah Shared Access Alliance, 463 F.3d at 1130 (upon a finding of considerable adverse effects, "such closures [under § 8341.2(a)] are nondiscretionary."). The issue would then be, as SUWA contends here, whether the agency's finding that no considerable adverse effects have occurred was arbitrary and capricious.

finality requirement in a flexible and pragmatic way." Natural Resources Defense Council, Inc. v. Thomas, 845 F.2d 1088, 1094 (D.D.C. 1988) (internal citation and quotation marks omitted).

Based on the language of the Winthrop Letter, it appears that BLM made the choice to consider the claims in SUWA's Petition, investigate, and ultimately reject such claims. BLM's Acting Field Manager Robert Winthrop says in his letter that he reviewed the Petition and, in consultation with his experts, took a look at the problem and made substantive conclusions:

> I have given careful consideration to the concerns expressed in your petition and have concluded that closure of the canyon is not warranted. After reviewing the information you provided and after conducting additional field assessments, we have determined that no resource uses and activities presenting occurring in the canyon are causing, or are likely to cause, significant impacts to the human environment. We have had several resource specialists (hydrologist, rangeland, and riparian) including experts from the BLM State Office and the Denver National Science and Technology Center assist us in assessing the health of the resources and conclude that no undue and unnecessary damage is occurring.

(Winthrop Letter (emphasis added).) The letter is evidence that the agency finished, or "consummated," its decisionmaking process after "reviewing the information [SUWA] provided and after conducting additional field assessments[.]" (Id.) Certainly the BLM determined its obligations (that is, that it does not need to close Arch Canyon to ORV use). And the decision is not tentative or interlocutory, notwithstanding Mr. Winthrop's statement that BLM "will continue to closely monitor activities in Arch Canyon and will make adjustments if necessary." (Id.) The BLM's review of SUWA's Petition concluded with issuance of the letter.

For these reasons, the court finds that the Winthrop Letter, and the decision communicated in it, constitute a final agency action under the APA. Accordingly, the decision is subject to judicial review under the APA. See also, e.g., Student Loan Mktg. Ass'n v. Riley, 104 F.3d 397, 405 (D.D.C. 1997) (stating that although "the overwhelming bulk of agency

9

correspondence is probably non-final," court found that agency letters interpreting statutory term were final agency action because elements set forth in Bennett v. Spear were satisfied); Community Hous. of Maine v. Martinez, 146 F. Supp. 2d 36, 44 (D. Me. 2001) (holding that HUD policy newsletter was final agency action because it was "consummation of decisionmaking process that began months earlier"); NRDC v. Thomas, 845 F.2d 1088, 1092, 1094 (D.D.C. 1988) (finding agency memorandum responding to NRDC petition for reconsideration of earlier agency action to be final agency action).

## CONCLUSION

The court holds that it has subject matter jurisdiction. First, judicial review is available under the Administrative Procedure Act because, contrary to the Government's contention, the agency action at issue is not committed to agency discretion by law and is not exempt under the narrow presumption of nonreviewability established by Heckler v. Chaney, 470 U.S. 821 (1985). Second, even if Heckler v. Chaney were to apply, SUWA has rebutted the presumption of unreviewability by showing that there is sufficient law to apply. Accordingly, the Federal Defendants' Motion to Dismiss (Dkt # 3) is DENIED.

SO ORDERED this 17th day of October, 2008.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge